**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

United States of America,

      v.

Montrease Young,

         Defendant.

Case No. 2:13-CR-138-JVB

**OPINION AND ORDER**

Defendant, Montrease Young, along with her coconspirators, has been indicted for

Conspiracy to Commit Financial Institution Fraud and Identity Theft in violation of 18 U.S.C. §

1349 and 18 U.S.C. § 1028(f). Defendant filed a motion to suppress her oral and written

statements to law enforcement officials investigating this matter, which the Court has denied.

Defendant now asks the Court, pursuant to Rule 14(a), to sever her trial from that of her

codefendant, Alexis Young. Two other codefendants, Chavonne Jackson and Angela Young,

have pled guilty and are awaiting sentencing.

In advancing her argument to sever, Defendant relies on four separate arguments. First,

Defendant asserts that her codefendants' testimony will violate her rights under the

Confrontation Clause as described in *Bruton v. United States*, 391 U.S. 123 (1968). Next,

Defendant maintains that the differences in culpability between her and her codefendants are so

great that it impairs her right to a fair trial. Third, Defendant asserts that she and her

codefendants have mutually antagonistic defenses, such that the "acceptance of one defendant's

defense will preclude the acquittal of the other defendant. *United States v. Carillo*, 435 F.2d 767, 778 (7th Cir. 2006). Finally, Defendant asserts that the codefendants adverse position to her creates the issue of multiple prosecutors.

## A. Background

Defendant and her codefendants, Angela Young, Alexis Young, and Chavonne Jackson, were indicted for Conspiracy to Commit Financial Institution Fraud and Identity Theft. Angela Young was also charged with additional related counts including: aggravated identity theft, wrongful disclosure of individually identifiable health information, and unlawful use and disclosure of social security numbers. The basic gist of their criminal conspiracy was that Angela Young would steal personally identifiable information and social security numbers from her employer, a health care provider, and then use that information to open fraudulent lines of credit. Based on the Indictment, the conspiracy resulted in the opening of almost thirty lines of credit using the stolen personal information.

Defendant's own statement to investigators describes her role within the conspiracy. Defendant met an unindicted coconspirator at Alexis Young's residence who later contacted Defendant and asked if she would accept packages at her home. Defendant stated that there would be no questions asked regarding the packages. (DE 113-2, Ex. B, at 1.) Defendant also admits to receiving money from her codefendants as well as gifts for her daughter. (*Id.*) Defendant does assert in her written statement that she never opened any lines of credit or used an improperly attained credit card. (*Id.* at 2.)

### B. Defendant's Arguments for Severance

As stated above, Defendant has put forth four primary arguments in favor of severance. The government's response to all of these arguments is two-pronged. First, the government maintains that none of these issues are so significant that they overcome the need for judicial and prosecutorial efficiency. Second, the government argues that any potential prejudice can be cured by proper limiting instructions and admonitions to the jury.

#### (1) *Bruton* Standard

In *Bruton v. United States*, 391 U.S. 123 (1968), the Court found that a defendant's rights under the Confrontation Clause were violated by the admission of a codefendants confession. The Court recognized that joinder of defendants is the general practice in order "to promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Id*. at 131, n.6. Nevertheless, Rule 14 authorizes a severance where it appears a defendant might be prejudiced by a joint trial. In *Bruton*, the Court found that a defendant could be prejudiced by the confession of a codefendant, that this prejudice cannot be dispelled by cross-examination if the codefendant does not take the stand, and a limiting instruction to the jury may be insufficient. *Id*. at 132.

Not every admission by a codefendant is covered by *Bruton*. For instance, in *United States v. Volpendesto*, 746 F.3d 273 (7th Cir. 2014), the Seventh Circuit Court of Appeals found that an admission by one codefendant that did not specifically implicate any codefendants in criminal conduct, was not sufficient for *Bruton* to apply. This ruling relied upon *Richardson v. Marsh*, where the Supreme Court examined whether *Bruton* applied when "the codefendant's

confession is redacted to omit any reference to the defendant, but the defendant is nonetheless linked to the confession by evidence properly admitted against him at trial." 481 U.S. 200, 202 (1987). In *Marsh*, the Court reasoned that the confession was not "powerfully incriminating" and only incriminated a codefendant "when linked with evidence later introduced at trial." *Id.* at 208. The Court eventually held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211.

### (2) *Differences in Culpability*

Defendant's next rationale for severance is that she is much less culpable than her codefendants. To bolster this argument, Defendant maintains that a majority of credit card applications were for the benefit of Alexis Young and were completed at Alexis Young's residence. And, as stated previously, Angela Young was the codefendant who obtained all of the personal information used to open the fraudulent lines of credit. Defendant also asserts, albeit incorrectly, that there is no direct evidence implicating her. Defendant's statement to investigators outlines her agreement to accept packages as well as the tangible gain she enjoyed as a result of this agreement.

This argument is based on the theory that "evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). This concept is similar to the theories espoused in *Bruton.* Nevertheless, the Supreme Court has indicated that when many defendants

4

are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. *See Kotteakos v. United States*, 328 U.S. 750, 774–775 (1946).

Nevertheless, the fact that the government has greater evidence against one co-defendant does not automatically give the other defendant grounds for severance. *United States v. Serpico*, 320 F.3d 691, 696 (7th Cir. 2003). Where the evidence against a defendant is sufficient to convict them, "jury instructions and other mitigative measures sufficed to limit prejudicial spillover and rendered the severance denial proper." *United States v. Morales*, 655 F.3d 608, 625 (7th Cir. 2011).

Defendant cites *United States v. Kahn* for the proposition that "a conspiracy trial creates real and serious possibilities of confusion in the jury, which may indulge in unwarranted imputations of guilt, particularly where the evidence is complex or circumstantial and where there are many defendants." 381 F.2d 824, 839 (7th Cir. 1967). However, the Court in *Kahn* also stated that "it is necessary to determine whether a joint trial infringes a defendant's right to a fundamentally fair trial" and this determination is made by "asking whether it is within the jury's capacity, given the complexity of the case, to follow admonitory instructions and to keep separate, collate, and appraise the evidence relevant only to each defendant." *Id*.

### (3) *Mutually Antagonistic Defenses*

Defendant next makes a one-paragraph argument that she and her codefendants have mutually antagonistic defenses. A mutually antagonistic defense entails that the acceptance of a defense of one codefendant will preclude the acquittal of other defendants. *United States v. Hartmann*, 958 F.2d 774, 786 (7th Cir. 1992). However, mutually "antagonistic defenses do not necessarily require severance." *United States v. Plato*, 629 F.3d 646, 648 (7th Cir. 2010).

Instead, a defendant must demonstrate that the joint trial deprived them of a specific trial right. *Id.* Mere finger-pointing between codefendants does not warrant severance. *United States v. Bruun*, 809 F.2d 397, 407 (7th Cir. 1987) ("While there was no doubt some hostility and finger-pointing during the joint trial, this alone is insufficient to justify granting a severance.").

### (4) *Multiple Prosecutor Problem*

In Defendant's final argument for severance, she argues that a joint trial here prejudices her because it introduces "what is in effect a second prosecutor into a case, by turning each codefendant into the other's most forceful adversary." *Zafiro v. United States*, 506 U.S. 534, 544 (1993). Defendant then relies upon *United States v. Tootick*, which addressed how the second prosecutor problem can prejudice a defendant during opening and closing arguments, cross-examination, and through a bolstering of the government's case. 952 F.2d 1078 (9th Cir. 1991).[1]

However, Defendant failed to outline the Ninth Circuit's complete rationale in *Tootick*. The Ninth Circuit Court of Appeals, in remanding for separate trials, emphasized that the joinder of defendants would have remained appropriate if the district court managed the trial better. *Toothick*, 952 F.2d at 1085. The Court emphasized that limiting instructions could have been given in order to neutralize any prejudice, so long as they were proper and timely. *Id*. The Court concluded that a "judge must actively supervise the trial and, if necessary, reiterate instructions in the wake of prejudicial events." *Id*.

### C. Analysis

The government is correct that any one of these arguments for severance can be mitigated through proper limiting instructions to the jury. The government is also correct that generally the

---

[1] The line of reasoning in *Toothick* has never been expressly adopted within the Seventh Circuit.

need for judicial economy is so great that severance is unnecessary in a case with only two defendants. Nevertheless, on the basis of the unique facts of the case and the numerous reasonable grounds for severance, the Court grants Defendant's Motion for Severance.

Taken in isolation, each of Defendant's arguments for severance is insufficient. However, the Court finds that each argument for severance has merit and cumulatively could unnecessarily prejudice the Defendant at trial. Alexis Young's confession, if introduced, could violate Defendant's rights under the Confrontation Clause. This is heightens the risk of prejudice because Alexis Young is Defendant's employer and alleged coconspirator. Even a proper limiting instruction from the Court might be inadequate to reduce this prejudice. Defendant also seems to be significantly less culpable than Angela or Alexis Young. Based on Defendant's statement and each party's statement at oral argument, it appears that she is a minor player in the overall conspiracy. The potential disparity between evidence offered against Defendant and evidence that solely implicates Alexis Young may be so significant that to try them together would prejudice Defendant. There is also a significant risk that mutually antagonistic defenses and the multiple prosecutor issue could prejudice Defendant. Accordingly, the Court grants Defendant's Motion for Severance (DE 104).

Two elements of the factual context of this case, when coupled with the above arguments for severance, also influenced the Court's decision. The first troubling factual element is Defendant's last name. Defendant shares a last name with her codefendant, but no familial ties. Additionally, another codefendant who has pled guilty and will likely testify at the trial, Angela Young, also shares a surname with Defendant but no familial ties. This coincidence could prejudice Defendant at trial. Next, Defendant is an employee of Alexis Young, which could unnecessarily prejudice her at trial if they were positioned at the defense table together.

**D. Conclusion**

Due to the factual context of the case and the four reasonable grounds for severance, the Court grants Defendant's Motion for Severance (DE 104). Consequently, Defendant Alexis Young's Motion for Severance (DE 147) is rendered moot. Lastly, since Montrease Young's trial has been severed from Alexis Young's trial, the Court grants Alexis Young's Motion to Continue (DE 143) and the trial date will be set in a separate Order. Montrease Young's trial will proceed as scheduled and begin on March 23, 2015.

**SO ORDERED** on March 11, 2015.

 s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE